**Donald Ray WALLACE, Appellant,**

v.

**STATE of Indiana, Appellee.**

**No. 84S00–9305–DP–527.**

Supreme Court of Indiana.

Sept. 28, 1994.

Rehearing Denied Dec. 14, 1994.

Judith G. Menadue, Elkhart, John J. Ray, Barnes & Thornburg, Indianapolis, Sp. Asst. Public Defenders, for appellant.

Pamela Carter, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., for appellee.

GIVAN, Justice.

In 1980, appellant was convicted in the Vigo Circuit Court of four counts of Murder. The jury recommended the death penalty. The trial judge followed the jury's recommendation and sentenced appellant to death.

The original conviction was appealed and upheld by this Court. *Wallace v. State* (1985), Ind., 486 N.E.2d 445, *cert. denied,* (1986), 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 723. In December of 1986, appellant filed a petition for post-conviction relief, which was denied by the trial court. That judgment was appealed to this Court and affirmed. *Wallace v. State* (1990), Ind., 553 N.E.2d 456, *cert. denied,* 500 U.S. 948, 111 S.Ct. 2250, 114 L.Ed.2d 491. In September of 1992, appellant filed a second petition for post-conviction relief, which also was denied by the trial court. This is an appeal from that decision.

The facts are: Appellant was in the process of burglarizing the home of Patrick and Teresa Gilligan when he was surprised by the family returning home. The Gilligans were accompanied by their two children, ages 4 and 5. At the time the victims were discovered, Mrs. Gilligan's hands were tied behind her back, and the two children were tied together. Each victim had died by gunshots to the head. A more detailed recitation of the facts is found in the original appeal *Wallace, supra,* 486 N.E.2d at 445.

In that appeal, appellant raised the question of his competency to stand trial. After the appointment of doctors and a hearing, the trial court found originally that appellant was incompetent to stand trial, and he was sent to Logansport State Hospital. Our opinion in the original appeal cites the rather long history of appellant's conduct upon which the first decisions of incompetency were based. This conduct prevailed over a period of time. However, at a subsequent hearing, it was brought out that several persons who had been around appellant during this period of time had observed him to act mentally incompetent only when the doctors were around and to speak of his conduct as an act to forestall being tried.

After hearing such evidence, the trial court ruled that appellant had been faking and that he in fact was competent to stand trial. Richard Milligan who had participated in several burglaries with appellant testified that he was "the brains" of the operation and that appellant had devised a system of using tape on a window to minimize the sound of breaking glass when they would break the window to gain entry. The original appeal covers approximately fifteen pages covering the issues raised by appellant.

In the second appeal, *Wallace, supra,* 553 N.E.2d at 456, this Court observed that many of the issues raised in the first post-conviction relief petition were issues which either were or could have been covered in the original appeal but because the State defended each of these issues and the trial court had decided all the issues on the merits, this Court would do likewise. Thus, on many of the issues, appellant received a second adjudication. That opinion covers approximately fifteen pages and covers eighteen issues presented to the Court.

Among those issues was the competency of the original trial counsel and appellate coun-

sel in the first appeal. One of the issues raised was that co-counsel was ineffective because he did not present a detailed history of appellant's past including his childhood which should have been presented to the jury as a mitigating factor concerning the death penalty.

At the post-conviction relief hearing, trial counsel testified that such evidence was considered. However, due to appellant's criminal history and his record as a juvenile offender he felt it would be detrimental to appellant to open the question of appellant's past history because his criminal conduct and delinquent conduct would overshadow any good that might be derived from the manner in which he had been treated as a child. This Court held that such a decision was a call to be made by trial counsel and did not indicate insufficiency of counsel.

As to appellate counsel, appellant claimed he was ineffective for failing to raise issues which this Court found during the first post-conviction appeal did not constitute reversible error. Thus, counsel was not ineffective for failing to raise the issues.

In the second post-conviction petition, appellant attempted again to raise several of the issues which already had been adjudicated and in addition presented a long litany of his history dating back to the type of person his grandfather was, the type of parents both his father and mother were, and the manner in which he was treated by other persons caring for him. After a brief summary of the content of the petition and the response by the State, the trial court observed that the issues had been adjudicated in this case and that evidence in fact had been presented concerning appellant's deprived childhood and his psychological condition. After making such findings, the trial court sustained the State's motion to dismiss.

■ The issues set forth in appellant's brief in this appeal clearly demonstrate that the trial judge was correct when he held that the matters attempted to be presented in fact were adjudicated in the prior cases. Appellant does add the additional claim that he was deprived of meaningful assistance of counsel at the original post-conviction relief proceeding. His main thrust is that the dep-

uty public defenders who handled the first post-conviction hearing were not skilled in capital cases and did not spend enough time in researching appellant's childhood history in order to make a proper presentation to the court.

Although this was a capital case in its inception, the filing of a post-conviction relief petition, even in a capital case, does not require a particular expertise in the trying of a capital case in its inception but rather requires a degree of skill in the manner in which post-conviction relief is presented to the trial court. In this the public defenders demonstrated an acceptable degree of skill as recited by this Court on the first post-conviction appeal.

■ The main thrust of appellant's appeal at this time is that his childhood treatment should have been delved into more thoroughly, especially on the presentation of evidence to the jury at the sentencing phase of the trial. It is not the manner in which a child is treated that excuses his later conduct or works as a mitigating factor in pronouncing sentence. Having been mistreated as a child is no license to commit crime. The real question whether it be the ability to form intent to commit a crime or a mental condition which should be considered as a mitigating factor is the mental condition of the defendant at the time the crime is committed.

■ As we said in *Terry v. State* (1984), Ind., 465 N.E.2d 1085, the defense of mental incapacity is always available. It would be entirely proper for a physician or layman for that matter to recite their belief that a defendant did not have the ability to form intent at the time of the commission of a crime based on a number of factors including mistreatment, medication, or intoxication. This does not mean that the childhood treatment, the medication, or intoxication are in and of themselves an excuse for committing a crime. It is the inability to form the intent at the time the crime was committed that is the issue before the court notwithstanding the cause therefor.

■ In the case at bar, the issue before the jury and the trial judge as to aggravators and mitigators was appellant's ability to form the intent to commit the charged crimes. The evidence in this record recites that appellant was the "brains" in a series of burglaries. When Mr. and Mrs. Gilligan surprised him while he was burglarizing their house, he methodically executed them and stated he did this so they could not identify him later. He executed the two small children because he said he did not want them to suffer the trauma of growing up without parents. Following the commission of the crime, he spoke of it in almost a braggadocio manner.

■ At the time appellant first was declared incompetent to stand trial and the period of time following that while being held in a mental institution, he on several occasions referred to the fact that he was faking and in fact his "act" was only put on when the doctors were present. After hearing extended evidence on this subject, the trial court ruled that he in fact had been faking and that he was competent to stand trial. This Court will not usurp the prerogative of the trial court and reweigh the evidence. *Braswell v. State* (1990), Ind., 550 N.E.2d 1280.

■ Appellant's claim that he was under the influence of alcohol and drugs at the time of the crime is to no avail where it is shown that he had considerable ability to act and react during the commission of the crime. *Terry, supra.*

The grist of this case has been ground both by the trial court and this Court beyond reason. We presume that because this is a death penalty case trial counsel, appellate counsel, and counsel at both post-conviction relief hearings have extended themselves to the utmost and have done so in a competent manner. It would be grossly unfair to brand counsel as ineffective simply because they did not succeed in their endeavors in appellant's behalf.

The trial court is affirmed. This case is remanded to the trial court for the setting of a date for execution.

SHEPARD, C.J., and DICKSON, J., concur.

DeBRULER, J., concurs in result with separate opinion.

SULLIVAN, J., concurs in result with separate opinion.

DeBRULER, Justice, concurring in result.

In Appellant Wallace's direct appeal, by a vote of three to two, this court, upon review of the death sentence, found it to be appropriate and affirmed its imposition. *Wallace v. State* (1985), Ind., 486 N.E.2d 445. Justice Prentice and I voted to affirm the convictions, but set aside the sentence of death because of the failure of the sentencing court to apply crucial statutory requirements. In Wallace's appeal from the denial of his first post-conviction petition, by a vote of three to two, this Court affirmed the trial court finding of no grounds for relief from the sentence of death. *Wallace v. State* (1990), Ind., 553 N.E.2d 456. Justice Dickson and I voted for a new death sentence hearing because the sentencing court had given weight to non-statutory aggravators. The 1985 and 1990 decisions of this Court are final, and the convictions and sentences may be set aside only by a grant of post-conviction relief. Though I remain convinced that positions taken in the dissenting opinions in the two prior appeals remain true and correct, they are, at this point, history.

The question on appeal at this point is whether the trial court correctly judged those seven specific grounds for post-conviction relief alleged in Wallace's second post-conviction petition. I find (1) that the trial court was authorized to employ summary procedures in resolving the petition, (2) that the failure to precisely follow the notice requirement of Ind.Trial Rule 56(C) impinged no substantial right, (3) that the ineffective assistance of counsel claim and all remaining grounds were properly rejected on the merits or because previously adjudicated. I therefore concur in affirming the judgment of the trial court that the specific grounds relied upon in this proceeding do not warrant relief from the convictions or the sentence of death.

SULLIVAN, Justice, concurring in result.

Donald Ray Wallace appeals from the dismissal of his second petition for post-conviction relief. These petitions relate to his 1982 conviction for murder for which he was sentenced to death. The appeal raises three types of issues.

First, Wallace contends that the second post-conviction trial court erred in granting summary judgment for the state on his contentions that the original trial was unfair because (i) he was intoxicated at the time of the crime, (ii) improper jury instructions were given during the penalty phase, and (iii) he was denied effective assistance of counsel at the penalty phase and sentencing hearing.

The trial court properly dismissed both the intoxication and jury instruction contentions because, as Wallace readily admits in his brief, he did not present at trial the defense of intoxication (Brief for Appellant at 60), and he did not object at trial to the alleged defects in the jury instructions (Brief for Appellant at 61–62). In general, errors neither assigned at trial level nor argued on direct appeal are waived as grounds for post-conviction relief. *Schiro v. State* (1989), Ind., 533 N.E.2d 1201, 1204, *cert. denied*, 493 U.S. 910, 110 S.Ct. 268, 107 L.Ed.2d 218 (1989).

It was also proper for the trial court to dismiss the claim of ineffective assistance of counsel during the original trial's penalty phase and sentencing hearing. The general rule is that if a claim of ineffective assistance of trial counsel is an issue known and available at the time of direct appeal, it is waived for purposes of PCR proceedings if not presented during the direct appeal process. *Johnson v. State* (1986), Ind., 502 N.E.2d 90, 91. However, because appellate counsel on direct appeal was the same as trial counsel, that rule does not apply. As the Court of Appeals said in *Davis v. State* (1975), 164 Ind.App. 331, 334, 328 N.E.2d 768, 771 n. 1, if a defendant is represented by the same counsel at trial and in the direct appeal process but by different counsel when seeking post-conviction relief, there may be no waiver, and the post-conviction court may properly reach the merits of a claim of incompetent trial counsel for the first time in post-conviction proceedings.

The rule here is that the claim is waived if not included in the first petition for post-conviction relief *Tillman v. State* (1987), Ind., 511 N.E.2d 447, 448. In fact, Wallace did raise the issue of the competence of trial counsel in his first petition for post-conviction relief and this Court reviewed it on appeal. See *Wallace v. State* (1990), Ind., 553 N.E.2d 456, 472–73, *cert. denied*, 500 U.S. 948, 111 S.Ct. 2250, 114 L.Ed.2d 491 (1991). Having litigated this issue in the first post-conviction proceeding, it is now *res judicata. Smith v. State* (1993), Ind., 613 N.E.2d 412, 413, *cert. denied*, —— U.S. ——, 114 S.Ct. 1634, 128 L.Ed.2d 357 (1994).

Second, Wallace contends that the second post-conviction court erred in granting summary judgment for the State on his contention that he was denied effective assistance of counsel during his first post-conviction proceeding. In reviewing claims of ineffective assistance of counsel at trial and in the direct appeal process, Indiana follows *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 2065, 80 L.Ed.2d 674 (1984). *Steele v. State* (1989), Ind., 536 N.E.2d 292, 293. Indeed, this was the standard applied by this court in Wallace's first post-conviction proceeding. *Wallace*, 553 N.E.2d at 472. The standard is different, however, when reviewing counsel's performance in the post-conviction process:

The right to counsel in post-conviction proceedings is guaranteed by neither the Sixth Amendment of the United States Constitution nor art. 1, section 13 of the Constitution of Indiana. A petition for post-conviction relief is not generally regarded as a criminal proceeding and does not call for a public trial within the meaning of these constitutional provisions. It thus is not required that the constitutional standards be employed when judging the performance of counsel when prosecuting a post-conviction petition at the trial level or at the appellate level.

We therefore apply a lesser standard responsive more to the due course of law or due process of law principles which are at the heart of the civil post-conviction remedy. We adopt the standard that if

counsel in fact appeared and represented the petitioner in a procedurally fair setting which resulted in a judgment of the court, it is not necessary to judge his performance by the rigorous standards set forth in *Strickland v. Washington.*

*Baum v. State* (1989), Ind., 533 N.E.2d 1200, 1201 (citations omitted). It is apparent both from the affidavits submitted by Wallace to the trial court and from this court's decision in Wallace's first post-conviction proceeding that the standards of *Baum* were met in that case. Thus, it was appropriate for the trial court to dismiss the contention of ineffective assistance of counsel at the first post-conviction proceedings.

Third, Wallace contends that the second post-conviction court made procedural errors by (i) not making the findings required by Post–Conviction Rule 1 § 12(g), (ii) not abiding by the time requirements of Trial Rule 56, and (iii) denying Wallace a neurological examination. As to the first two of these contentions, I find no error. No prejudice to Wallace is contended or even seriously documented by the slightly accelerated summary judgment procedures employed here. Furthermore, Wallace filed a substantial response to the state's motion for summary judgment within the time period given. While I would have preferred a more detailed statement of the trial court's reasons for dismissing, it should be clear from the foregoing that the basis for the trial court's order was clearly established in the record. *Smith,* 613 N.E.2d at 414 (summary dismissal of second petition for post-conviction relief proper where second petition raised no new issues which had not been decided previously or which were not available to defendant in his two earlier appeals).

Finally, it was clearly within the trial court's sound discretion to deny the neurological examination. Wallace sought the neurological examination in an effort to demonstrate both absence of intent and mitigation. These issues were available both at trial and in the first post-conviction proceeding and have been, therefore, waived or already decided. It should go without saying that the court was under no duty to authorize an examination under circumstances where the results would have only supported issues waived or already decided.

For these reasons, I concur in affirming the judgment of the trial court that the specific grounds relied upon in this proceeding do not warrant relief from the convictions or the sentence of death.